IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MISTY M. ESTEP,                      )
                                     )
       Plaintiff,            )
                                     )
   v.                             )   Civil Action No. 18-92-E
                                     )
                                     )
NANCY A. BERRYHILL, ACTING           )
COMMISSIONER OF SOCIAL SECURITY      )
ADMINISTRATION,                      )
                                     )
       Defendant.            )

O R D E R

AND NOW, this 29th day of March, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on July 27, 2018,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on June 22, 2018,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.    **Background**

On July 14, 2014, Misty M. Estep protectively filed a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Specifically,

Plaintiff claimed that she became disabled on July 14, 2014, due to bipolar, learning disability, and depression. (R. 184).

After being denied initially on December 22, 2014, Plaintiff sought, and obtained, a hearing on December 14, 2016, before an Administrative Law Judge ("ALJ"). (R. 35-63). In a decision dated February 23, 2017, the ALJ denied Plaintiff's request for benefits. (R. 13-34). The Appeals Council declined to review the ALJ's decision on February 12, 2018. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'"

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability

benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

## III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the application date, July 14, 2014. (R. 18). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had certain severe impairments, particularly, degenerative osteophyte disc complex at C5-6, status-post excision of

a right lumbar lipoma, hepatitis C, major depressive disorder, bipolar disorder, borderline personality disorder, posttraumatic stress disorder, borderline intellectual functioning, and substance use disorder. (R. 18). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 19).

The ALJ next found that Plaintiff retained the RFC to perform light work, except that she is limited to low stress jobs, defined as having no fixed production quotas; no hazardous conditions; only occasional decision making with only occasional changes in the workplace setting; and only occasional interaction with the public, coworkers, and supervisors. (R. 21). At Step Four, the ALJ found that Plaintiff has no past relevant work, so she moved on to Step Five. (R. 28). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as laundry folder, housekeeper/ cleaner, and laundry and linen sorter. (R. 29). Even if the exertional category was reduced to sedentary work, the VE testified that Plaintiff could perform the requirements of representative occupations such as mail sort clerk/addresser, surveillance system monitor (video only), and final assembler, optical. Accordingly, the ALJ found that Plaintiff was not disabled. (R. 29).

## IV. Legal Analysis

Plaintiff raises several arguments as to why she believes that the ALJ erred in finding her to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Plaintiff argues, in part, that her RFC is not supported by substantial evidence because the ALJ did not properly consider the opinion of consultative examining psychologist Cynthia Wright, D.Ed. More specifically, Plaintiff

contends that the ALJ did not provide a full and accurate explanation for her treatment of Dr. Wright's opinion, to which she gave only "some weight" in making her RFC determination. (R. 24). The Court finds that, because the ALJ failed to address properly the opinion of Dr. Wright, the Court cannot find that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 416.945(a)(1). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

The record in this case contains two opinions by Dr. Wright: (1) a Psychiatric Evaluation report and accompanying Medical Source Statement of Ability to Do Work-Related Activities (Mental), completed after Plaintiff's examination on October 23, 2014 (R. 278-86); and (2) an Intelligence Evaluation and accompanying Medical Source Statement of Ability to Do Work-

Related Activities (Mental), completed after Plaintiff's examination on December 18, 2014 (R. 300-08).

In addressing Dr. Wright's first opinion, the ALJ noted that that opinion indicated that Plaintiff had no limitations in the ability to understand, remember, and carry out simple instructions, mild limitations in the ability to make judgments on simple work-related decisions, and moderate limitations in the ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (R. 24). The ALJ further noted that Dr. Wright opined at that time that Plaintiff also had marked limitations in the ability to interact appropriately with the public, supervisors, and coworkers, and marked limitations in the ability to respond appropriately to usual work situations and changes in a routine work setting. (R. 24). The ALJ explained that she gave "some weight" to Dr. Wright's opinion to the extent Dr. Wright had opined that Plaintiff had "none to moderate work-related restrictions." (R. 24). However, the ALJ also stated that she found Dr. Wright's "marked ratings to be an overestimate of the claimant's functioning as based heavily upon subjective reports during one evaluation, which are not supported by the totality of the evidence." (R. 24).

In addressing Dr. Wright's second opinion, the ALJ noted that Dr. Wright had indicated therein that the results of that evaluation could be "an underestimation of the claimant's intellectual functioning due to her tenseness response style and desire to be done as quickly as possible." (R. 24). The ALJ explained that Dr. Wright's second opinion indicated that Plaintiff had no limitations in the ability to understand, remember and carry out simple instructions, but that she had moderate to marked restrictions with regard to handling complex instructions. (R. 24). Further, the ALJ stated that "[a]s with her prior assessment, Dr. Wright continued to opine marked limitations regarding social interaction." (R. 24). The ALJ concluded that she

7

gave only "some weight" to Dr. Wright's second opinion because "again, these marked restrictions do not appear consistent with the overall record; including Dr. Wright's own examination findings." (R. 24).

The Court finds, however, that the ALJ's explanations for the weight he afforded to both of Dr. Wright's opinions are lacking in sufficient specificity to allow for judicial review. With regard to Dr. Wright's first opinion, the ALJ stated that Dr. Wright's finding of marked limitations was not supported by the "totality of the evidence," but she gave no indication of specific evidence to which she was referring.

With regard to Dr. Wright's second opinion, the ALJ noted Dr. Wright's comment that the results of her evaluation "could be an underestimation of Plaintiff's intellectual functioning," but he failed to mention that Dr. Wright had also expressly stated in the same sentence that the results of her evaluation were, nevertheless, "considered to be valid." (R. 303). Also, while the ALJ stated that Dr. Wright had continued to opine in her second opinion that Plaintiff had marked limitations regarding social interactions, he failed to mention that Dr. Wright had also found, once again, that Plaintiff had marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 307). Moreover, in explaining why he gave only some weight to Dr. Wright's second opinion, the ALJ merely stated that the "marked restrictions do not appear consistent with the overall record; including Dr. Wright's own examination findings." (R. 24). Here again, the ALJ failed to provide any explanation as to what parts of the overall record he found to be inconsistent with Dr. Wright's

opinion, nor did he specify which of Dr. Wright's examination findings were inconsistent with her opinion.[1]

Thus, the ALJ justified her partial rejection of Dr. Wright's opinions by stating in essence that they were not supported by other evidence in the record. In making these assertions, the ALJ did not, however, make reference to any evidence in particular. Considering the record in this case, the ALJ's general statements are not sufficient to direct the Court to specific evidence in support thereof. Since the ALJ did not provide further explanation as to the particular evidence she relied upon in reaching her conclusions regarding Dr. Wright's opinions—nor is it clear how the record is inconsistent with Dr. Wright's findings that Plaintiff has certain marked (or moderate to marked) limitations—the ALJ's decision lacks adequate discussion and clarity to

---

[1] The ALJ also made several confusing remarks regarding certain "Behavioral Observations" that Dr. Wright included in her second opinion. Specifically, in discussing whether Plaintiff had an impairment that met the severity of one of the listings, the ALJ, twice, referred to Dr. Wright's comment that the results of her evaluation may be an underestimation due to Plaintiff's "tenseness response style and desire to be done as quickly as possible." (R. 303).

First, when considering Plaintiff's limitations in understanding, remembering, or applying information, the ALJ noted that Plaintiff "did occasionally require the repetition of auditory tasks because of difficulty in recall *but there was also mention of a tenseness response style and desire to be done as quickly as possible*." (R. 19 (emphasis added)). And then again, when considering Plaintiff's limitations in concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff's "attention and concentration fluctuated during intellectual testing later that month, *but she expressed a desire to be done as quickly as possible*." (R. 20 (emphasis added)). It is unclear to the Court how a "tenseness response style" or a "desire to be done as quickly as possible" necessarily discounted either Plaintiff's need for repetition of auditory tasks because of difficulty in recall, or Plaintiff's attention and concentration fluctuating during testing.

Thus, the Court simply notes that the ALJ appeared to use Dr. Wright's comment—which was included at the end of her narrative and just before she presented her intelligence test results—to discount Dr. Wright's various behavioral observations generally. It is not clear to the Court, however, whether Dr. Wright intended to undercut every observation in her report when she chose to add this comment to her narrative.

9

explain her findings in this regard. Thus, the Court finds that the ALJ's RFC analysis is simply insufficient to permit meaningful review.[2]

Accordingly, in this case, without providing an adequate explanation of her reasons for rejecting the limitations at issue in Dr. Wright's opinion, it is not apparent to the Court whether the ALJ's decision in this regard was based on substantial evidence. While the ALJ was certainly not required simply to adopt all of the findings of Dr. Wright, she was required to explain adequately her basis for rejecting them if she chose to do so. Thus, the ALJ's comments concerning the limitations contained in Dr. Wright's opinion do not allow the Court to determine the basis for her decision to give "some weight" to that opinion. Remand is therefore required to allow for more focused discussion regarding the ALJ's rationale for rejecting the limitations found by Dr. Wright.

Additionally, the ALJ should, of course, ensure that proper weight be accorded to the various other opinions and medical evidence presented in the record, and she should verify that her conclusions at all steps of the sequential evaluation process are adequately explained, in

---

[2] Along the same lines, the Court notes that the ALJ gave very little explanation for her decision to afford "great weight" to the opinion of state agency consultant Emanual Schnepp, Ph.D., who reviewed Plaintiff's records but did not find Plaintiff's impairments to be as limiting as Dr. Wright did. (R. 25). While the ALJ is not required to give greater weight to examining physicians' opinions than to non-examining physicians' opinions, the ALJ must adequately explain her reasons for finding as she did. See, e.g., Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of a non-examining state agency reviewing psychologist, rather than the opinions of a treating physician and a consulting examiner); Salles v. Comm'r v. Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007) (stating that if a "treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record"). Moreover, the ALJ's explanation that Dr. Schnepp's assessment was "consistent with the substantial evidence of record, including that, which was received at the hearing level" fails to shed any additional light on the rationale underlying the ALJ's decision as to the weight given to Dr. Wright's opinions. (R. 25).

order to eliminate the need for any future remand.[3]  Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in fact, be supported by the record.  It is, instead, the need for further explanation that mandates the remand on this issue.

## V.     Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case.  The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf:            Counsel of record

---

[3] Although the ALJ expressly stated in her decision that she had considered whether Plaintiff's mental impairments met the criteria of listings 12.02, 12.04, 12.06 and 12.08, she did not indicate that she had considered whether Plaintiff's impairments met the criteria of listing 12.05. (R. 19-20).  While the Court makes no finding at this juncture whether the ALJ erred in declining to consider this listing, the ALJ should nevertheless, on remand, carefully evaluate whether listing 12.05 should be considered in this case.